**UNITED STATES, Appellee,**

v.

**George RHODIS, Defendant–Appellant.**

**Docket No. 02–1009.**

United States Court of Appeals,
Second Circuit.

Jan. 14, 2003.

John Hinton III, Tax Division, Department of Justice, Washington, D.C. (Eileen O'Connor, Assistant Attorney General, Department of Justice; Robert E. Lindsay and Alan Hechtkopf, Attorneys, Tax Division, Department of Justice, on the brief)., for Appellee.

Catherine L. Redlich, Driscoll & Redlich, New York, NY, for Defendant–Appellant.

Present: LEVAL, CALABRESI, and B.D. PARKER, Jr., Circuit Judges.

## SUMMARY ORDER

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the matter is **REMANDED** for reconsideration of any effect of the 1993 deductions on the sentence, and the judgment of conviction is **AFFIRMED** in all other respects.

Defendant-appellant George Rhodis appeals from a judgment of the United States District Court for the Eastern District of New York (Joanna Seybert, *Judge*), convicting him of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371, and filing false personal and corporate tax returns, in violation of 26 U.S.C. § 7206(1). The District Court sentenced George Rhodis to 21 months in prison, a $50,000 fine, restitution of $99,317, and a three-year term of supervised release. On appeal, George Rhodis challenges (1) the sufficiency of the evidence supporting his conviction, (2) the District Court's conscious avoidance jury instruction, and (3) the District Court's calculation of the tax loss.

In analyzing the sufficiency of the evidence, we view the evidence in the light most favorable to the prosecution and consider whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Anglin*, 169 F.3d 154, 159 (2d Cir.1999). We thus consider the evidence in its totality and draw all reasonable inferences in the Government's favor. *United States v. Autuori*, 212 F.3d 105, 114 (2d Cir.2000). George Rhodis challenges the sufficiency of the evidence supporting the conclusions that (1) he knowingly signed the false returns in question and (2) he conspired to defraud the government.

■ The Government's evidence established that, from 1993 through 1995, tax returns allegedly signed by George Rhodis failed to report approximately $700,000 in interest and real estate rental income. "The fact that an individual's name is signed to a return, statement, or other document shall be *prima facie* evidence for all purposes that the return, statement, or other document was actually signed by him." 26 U.S.C. § 6064; *see also United States v. Kim*, 884 F.2d 189, 195 (5th Cir. 1989) (applying 26 U.S.C. § 6064 in criminal prosecution for tax evasion). Moreover, numerous documents upon which George Rhodis's signature appeared—including amended tax returns, a settlement agreement, and a loan application—were admitted into evidence without objection as to the authenticity of the signatures. Indeed, George Rhodis's counsel himself introduced the amended tax returns containing his signatures. A jury may com-

pare a known handwriting sample with another sample to determine if the handwriting in the latter is genuine. Fed. R.Evid. 901(b)(3). Thus, the evidence was sufficient for a jury to find that the signatures on the false tax returns belonged to George Rhodis.

■ With regard to the sufficiency of the evidence of a conspiracy to defraud the United States, George Rhodis was intimately involved in the affairs of the two Roosevelt Avenue Corporations in which he and his brother, John, were partners. George Rhodis personally negotiated leases with tenants, asked tenants to make their rent checks out to him, collected rent, and told the brothers' secretary to deposit rent proceeds into his, George Rhodis's, personal accounts. The Government's evidence included, among other things, (1) numerous rent checks made out to, and endorsed by, George Rhodis, and (2) tax returns, signed by George Rhodis, that did not report the income that had been deposited into his personal accounts.

The Government's evidence also established that in 1992 George Rhodis signed a loan application that reported the monthly income generated by the Roosevelt Avenue Corporations to be substantially higher than the amounts reported on the tax returns that he signed from 1993 through 1995. Moreover, at an albeit unrelated meeting with the brothers' accountant, Christos Tzelios, George Rhodis did not take advantage of an opportunity to tell Tzelios that the Roosevelt Avenue Corporations' financial records—upon which Tzelios depended to prepare the corporate tax returns—were unreliable and did not show income that was being diverted into the brothers' personal accounts. Finally, George Rhodis was party to the brothers' settlement agreement with Mireya DeLaRosa, which resulted from—among other things—her threat to tell the Internal Revenue Service about the brothers' fraudulent filings. This proof afforded a sufficient factual predicate to support George Rhodis's conviction.

■ A conscious avoidance jury instruction is appropriate when (1) the element of knowledge is in dispute and (2) the appropriate factual predicate for the charge existed. *United States v. Ferrarini*, 219 F.3d 145, 154 (2d Cir.2000), *cert. denied*, 532 U.S. 1037, 121 S.Ct. 1998, 149 L.Ed.2d 1001 (2001). Both at trial and on appeal, George Rhodis has asserted that he lacked sufficient knowledge of the falsity of the tax returns. For example, in his opening statement at trial, George Rhodis's counsel told the jury that "the evidence will show ... Mireya Cuba DeLaRosa, ... took advantage of two people who were living in the state of Florida, and unfortunately were not paying keen attention to the conduct of a woman who held herself out to be ... a person who was familiar with handling accounting, including accounts receivable, accounts payable and reconciliations, financial analysis...." Transcript, March 27, 2001, p. 156–57. Thus, George Rhodis himself placed the element of his knowledge in dispute at the start of the trial.

A sufficient factual predicate exists if "the evidence is such that a rational juror may reach [the] conclusion beyond a reasonable doubt" that the defendant "was aware of a high probability of the fact in dispute and consciously avoided confirming that fact." *United States v. Rodriguez*, 983 F.2d 455, 458 (2d Cir.1993). As catalogued above, the Government provided ample evidence that George Rhodis personally participated in the operations of the Roosevelt Avenue Corporations and diverted income from them that he did not report on his personal returns. The discrepancy between the income reported on the 1993–1995 tax returns and the income

asserted on the 1992 loan application, combined with the degree of George Rhodis's involvement in the Roosevelt Avenue Corporations, afforded a basis for concluding that either he knew the tax returns to be false or else that he "was aware of a high probability [that he was filing false tax returns] and consciously avoided confirming that fact." *Rodriguez*, 983 F.2d at 458. Consequently, we see no error in the District Court's decision to give a conscious avoidance instruction.

Although George Rhodis adopts his brother's claim that the jury could have mistakenly applied the conscious avoidance charge to the conspiracy count, it is clear from the record that the conscious avoidance charge took place in the context of the District Court's discussion of the substantive offenses, not the conspiracy. Moreover, despite George Rhodis's claims that the charge's language was confusing and imputed John Rhodis's knowledge to George, upon a careful review of the record as a whole, we find that the charge's language was proper and sufficiently distinguished the issue of George Rhodis's knowledge from that of his brother. *See United States v. Koh*, 199 F.3d 632, 641 (2d Cir.1999).

Finally, George Rhodis challenges the District Court's calculation of the tax loss. At sentencing, the District Court calculated the United States' tax loss by first adding (1) $144,206 in unreported interest income from 1993 and (2) $565,202, the difference between the gross income fraudulently claimed for 1993–1995 and the gross income subsequently reported for that period on amended tax returns. The District Court then multiplied the sum by 28 percent, arriving at a total tax loss of $200,652. The District Court did not use the net income figures of the amended tax returns and thus did not count the $20,800 in additional deductions listed on one cor-

poration's amended 1993 tax return. In addition to challenging the interest income figure, George Rhodis contends that he should not be accountable for $2,018 of tax loss due to DeLaRosa's failure to file individual tax returns during the years she managed the Roosevelt Avenue Corporations. George Rhodis also adopts his brother's argument on appeal that the District Court should have taken into account the deductions reported on the amended 1993 tax return.

■ This Court reviews *de novo* the District Court's application of the Sentencing Guidelines and reviews the District Court's factual findings for clear error. *See United States v. Sisti*, 91 F.3d 305, 310 (2d Cir.1996). When "the amount of tax loss [is] uncertain[,] the guidelines contemplate that the court will simply make a reasonable estimate based on the available facts." U.S.S.G. § 2T1.1, comment 1. Here, the relevant financial records were, as George Rhodis's nephew testified, a "total mishmash" in 1996 and "still not organized" by the time of the trial. (Transcript, April 12, 2001, pp. 1484, 1608.) There was evidence that interest had been paid in 1993 and testimony that no interest payments had been missed, and the District Court's calculation of the unreported interest income was reasonable.

■ Likewise, the District Court did not err in attributing to George Rhodis the $2,018 in tax loss stemming from DeLaRosa's failure to file income tax returns for the period she managed the Roosevelt Avenue Corporations. The Sentencing Guidelines state that, in a jointly undertaken criminal activity, the foreseeable acts of one participant are attributable to a co-participant for sentencing purposes. U.S.S.G. § 1B1.3(a)(1)(B). The brothers paid DeLaRosa in cash and entrusted her with the diversion of unreported funds into their personal accounts. DeLaRosa never

received a W–2 or a 1099 from 95–45 Roosevelt Avenue Corporation, the corporation for which she technically worked. Indeed, the false tax returns at issue never reported salary or wage payments to DeLaRosa. Finally, at John Rhodis's suggestion, DeLaRosa did not file income tax returns for 1994 and 1995. Thus, DeLaRosa's failure to file income tax returns was foreseeable, and the consequent tax loss of $2,018 was properly attributable to George Rhodis.

When calculating tax loss, district courts must give defendants the benefit of legitimate deductions. U.S.S.G § 2T1.1; *United States v. Martinez–Rios,* 143 F.3d 662, 671 (2d Cir.1998). Here, however, the District Court apparently gave neither John nor George Rhodis the benefit of deductions claimed on the amended 1993 return. Since the record is unclear as to whether the District Court considered the deductions illegitimate or failed to consider them at all, we remand so that the District Court can clarify its calculation.

We have considered the appellant's remaining contentions and find them to be without merit. Accordingly, the matter is **REMANDED** for reconsideration of any effect of the 1993 deductions on the sentence, and the judgment of conviction is **AFFIRMED** in all other respects.